IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2016 MAY 12 P 12: 02

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

MARILYN R. SCROGGINS, on behalf of herself and all others similarly situated,

Plaintiff,

v.

LIFEPOINT HEALTH, a corporation,

Defendant.

CIVIL ACTION NO.: 2:16-cv-338-WHA

## CLASS ACTION COMPLAINT

Plaintiff Marilyn R. Scroggins brings the following Complaint, on behalf of herself and all others similarly situated, against Defendant LifePoint Health:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Marilyn R. Scroggins ("Plaintiff") is a resident citizen of Brewton, Alabama.

2. Defendant LifePoint Health ("LifePoint") is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Tennessee.

3. This Court has subject-matter jurisdiction of this class action pursuant to 28 U.S.C. §1332(d)(2)(A), because the matter in controversy, the aggregated claims of the individual class members, exceeds the sum of five million dollars, exclusive of interest and costs, and Plaintiff, a member of the proposed class, is a citizen of a State different from LifePoint.

4. Venue is proper in the Middle District of Alabama pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district. Venue is also proper in the Middle District of Alabama pursuant to 28 U.S.C. §1391(b)(1), in that, upon information and belief, LifePoint

resides in this State and in this judicial district, because LifePoint purposefully does substantial business in the State of Alabama and substantial business in this district, and therefore is subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

5. LifePoint is a healthcare company that owns and/or operates hospitals in twenty-two states. LifePoint owns and/or operates two hospitals in the State of Alabama, Andalusia Health, also known as Andalusia Regional Hospital, in Andalusia, Alabama, and Vaughan Regional Medical Center in Selma, Alabama. LifePoint is a for-profit healthcare company.

6. Upon information and belief, LifePoint controls the manner, methods, and means of the billing practices and bill-collection practices at the hospitals it owns and/or operates, such that those hospitals are LifePoint's agents for the purposes of their billing and bill-collection practices.

7. Upon information and belief, the billing and bill-collection practices described herein are conducted by the hospitals owned and/or operated by LifePoint at LifePoint's direction and under its control, such that these activities are the actions of LifePoint as its agents' principal.

8. LifePoint, as described in detail below, routinely subverts the financial interests of its patients for its own benefit and profits through unlawful and predatory billing practices.

9. Upon information and belief, LifePoint screens all patients and makes a determination regarding the reason for treatment and whether there may be sources of payment other than health insurance available.

10. Upon information and belief, if the patient has private health insurance or is a participant in a group health and welfare plan (hereinafter collectively referred to as "health

insurance"), but is identified as one whose medical bills may be recoverable from another source, LifePoint does one of the following things: (1) LifePoint refuses to submit that patient's medical bills to his or her health insurance carrier, even though LifePoint is contractually required to submit said bills to the health insurance carrier. (2) LifePoint initially submits the patient's medical bills to his or her health insurance carrier, but thereafter, refunds the health insurance carrier's discounted payment after receiving a larger payment from another source. (3) LifePoint submits the patient's medical bills to his or her health insurance carrier, and keeps the health insurance carrier's discounted payment, but then seeks to collect the balance of the undiscounted charges from another source.

11. Upon information and belief, while engaging in these practices, LifePoint routinely seeks payment for the medical bills from those same patients, either directly or indirectly.

12. Upon information and belief, LifePoint seeks payment for medical bills through means that include demanding cash payment directly from the patients, and placing unlawful hospital liens upon patients' third-party tort claims and recovery and/or patients' automobile-insurance benefits (medical-payments benefits and uninsured/underinsured-motorist benefits).

13. LifePoint pursues this course of conduct despite the patients having health insurance and being contractually entitled to have their medical bills submitted to their health insurance carriers for payment.

14. Upon information and belief, LifePoint is required by its contracts with its patients' health insurance carriers to submit insured patients' medical bills directly to the carriers. Thus, LifePoint was required to submit Plaintiff's medical bills to her health insurance carrier, United Healthcare. Upon information and belief, LifePoint is required to honor a

3

contractual discount with its patients' health insurance carriers and accept discounted payments from those health insurance carriers in full satisfaction of its patients' debts, except copays and deductibles. Thus, pursuant to the contracts, such an insured patient never incurs a debt to LifePoint or its hospital for covered services in excess of the amount of copays and deductibles. Similarly, Plaintiff never incurred a debt to LifePoint or Andalusia Regional Hospital for covered services in excess of the amount of her copays and deductibles.

15. Upon information and belief, LifePoint is precluded by its contracts with health insurance carriers (such as Plaintiff's insurer, United Healthcare) from seeking payment for covered services from other sources, including from the patient directly, or by filing hospital liens.

16. Such patients are unable to submit their medical bills directly to their health insurance carriers because LifePoint is the entity responsible for such submission. LifePoint is the only entity in possession of the information required to make such a submission, and LifePoint is the entity that has a contract with the health insurance carrier for a reduced compensation for treating patients with health insurance.

17. Through LifePoint's billing and bill-collection practices, it attempts to maximize the amount it receives for covered services by seeking from patients the full amount charged (which is more than it is entitled to receive for the covered treatment), rather than accepting the discounted amount it has contractually agreed to accept as full payment, except for copays and deductibles, from the patients' health insurance carriers. Upon information and belief, LifePoint derives considerable profit from this policy and business model.

18. By employing such a policy and business model, LifePoint has unlawfully violated the rights of Plaintiff and the Class members as described more particularly below.

4

LifePoint has breached its contracts with the health insurance carriers, when its patients are intended third-party beneficiaries of the contracts, and it has been unjustly enriched.

## THE FACTS PERTAINING TO THE NAMED PLAINTIFF

19. On May 19, 2015, Plaintiff was involved in an automobile accident in Covington County, Alabama. On the day of the accident, she was transported by ambulance to Andalusia Regional Hospital for emergency-room ("ER") treatment for injuries she received in the wreck.

20. At that time, Plaintiff had health insurance with United Healthcare, which covered the ER services she received. Andalusia Regional Hospital did not submit Plaintiff's medical bills to United Healthcare for payment. Instead, Andalusia Regional Hospital charged Plaintiff the undiscounted sum of $11,740.75 for ER services rendered. Pursuant to Plaintiff's health insurance policy with United Healthcare, however, Plaintiff only owed Andalusia Regional Hospital a $150 copay.

21. Andalusia Regional Hospital subsequently obtained $5,000 in med pay from Plaintiff's automobile insurer, Allstate. Andalusia Regional Hospital applied this sum to the payment of Plaintiff's undiscounted medical bills.

22. On June 10, 2015, Andalusia Regional Hospital filed a hospital lien for $6,740.75 in Covington County, Alabama, on all claims or demands accruing to Plaintiff on the account of her injuries. The lien recited that it was filed by "Andalusia Regional Hospital – LifePoint" "operated by/owned by LifePoint."

23. Plaintiff's claims against the third-party tortfeasor and for underinsured-motorist benefits were settled by the tortfeasor's and Plaintiff's insurance carriers. The insurers, however, refused to pay the settlement proceeds unless Plaintiff would deduct the amount of the hospital lien and pay the lien with those monies.

24. On May 4, 2016, Plaintiff's personal-injury attorney used $6,740.75 from the settlement to pay Andalusia Regional Hospital and satisfy the hospital lien, as the lien was preventing Plaintiff from receiving any compensation for her injuries.

## CLASS ACTION ALLEGATIONS

25. This action is brought as a plaintiffs' class action pursuant to Federal Rule of Civil Procedure 23(b)(3). Plaintiff brings this action on her own behalf, and on behalf of all others similarly situated, as representative of the following Class:

> All persons in the United States who received any type of healthcare treatment from any healthcare facility that is owned or operated by LifePoint Health, while covered by private health insurance or while a participant in a group health and welfare plan (hereinafter collectively referred to as "health insurance"), and within six years preceding the commencement of this action, whose medical bills for covered treatment were not submitted to the patient's health insurance carrier for payment, and LifePoint Health obtained payment for the undiscounted medical bills directly from the patient, and/or from the patient's third-party tort recovery and/or automobile-insurance benefits (medical-payments benefits and uninsured/underinsured-motorist benefits), or LifePoint Health placed a hospital lien on the patient's third-party tort claim and/or automobile-insurance benefits which has not been satisfied.
>
> Excluded from the Class are (1) the officers, directors, and employees of LifePoint Health, and of healthcare facilities owned or operated by LifePoint Health; and (2) all judicial officers of the United States who preside over or hear this case, and all persons related to them as specified in 28 U.S.C. § 455(b)(5).

26. The members of the Class are readily identifiable from the information and records in the possession or control of LifePoint.

27. Upon information and belief, the Class consists of hundreds and most likely thousands of individual members, and is therefore so numerous that individual joinder of all members is impracticable.

28. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual members of the Class. The wrongs suffered and remedies sought by Plaintiff and the other members of the Class are premised upon an unlawful scheme perpetuated uniformly upon all the Class members. The only material difference between the Class members' claims is the exact monetary recovery to which each Class member is entitled. The common questions include, but are not limited to, the following:

(a) Whether LifePoint entered into contracts with various health insurance carriers providing, among other things, that health insurance claims must be submitted to the carriers for payment;

(b) Whether LifePoint violated its contracts with various health insurance carriers by not submitting medical bills to the carrier;

(c) Whether LifePoint's contracts with various health insurance carriers required it to honor a contractual discount and accept discounted payments from those carriers in full satisfaction of its patients' debts, except copays and deductibles;

(d) Whether LifePoint violated its contracts with various health insurance carriers by not honoring the contractual discount and by not accepting discounted payments from those carriers in full satisfaction of its patients' debts, except copays and deductibles;

(e) Whether LifePoint is precluded by its contracts with various health insurance carriers from seeking payments for covered services from other sources, including from the patient, the patient's third-party tort claims and recovery, and the patient's automobile-insurance benefits;

(f) Whether LifePoint violated its contracts with various health insurance carriers by pursuing payment for covered services through placing hospital liens upon patients' third-party tort claims and recovery and/or the patient's automobile-insurance benefits, by obtaining payment from the proceeds of patients' third-party tort recovery and/or automobile-insurance benefits, and/or by obtaining payment directly from the patients;

(g) Whether Plaintiff and the Class members are intended third-party beneficiaries of LifePoint's contracts with their health insurance carriers; and

(h) Whether LifePoint has been unjustly enriched at Plaintiff's and the Class

members' expense through the above-described misconduct.

29. Plaintiff's claims are typical of those of the Class and are based on the same legal theory as those of the Class members. Plaintiff's claims and those of the Class members all arise from the same pattern or practice by LifePoint, set out above.

30. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel who are highly experienced and competent in complex consumer class-action litigation, and Plaintiff and her counsel intend to prosecute this action vigorously. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff's interests are coextensive with those of the Class, and Plaintiff has no interests adverse to those of the Class members.

31. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. It is desirable to concentrate the litigation of the claims in this forum, because the damages suffered by the individual Class members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against LifePoint. Moreover, the individual class members are unlikely to be aware of their rights. Thus, it is unlikely that the Class members, on an individual basis, can obtain effective redress for the wrongs done to them. Additionally, the court system would be adversely affected by such individualized litigation. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase delay and expense to all parties and the court system from the issues raised by this action. In contrast, the class-action device provides the benefit of adjudication of these issues in a single proceeding, with economies of scale and comprehensive supervision by a single court.

32. Plaintiff and her counsel are aware of no litigation concerning the controversy already begun by or against Class members. This also indicates that the Class members' interest in individually controlling the prosecution of separate actions is minimal.

33. No difficulties are likely to be encountered in managing this action as a class action.

## COUNT I

### BREACH OF CONTRACT
### (Third-Party Beneficiary)

34. Plaintiff realleges and incorporates by reference all preceding allegations, and alleges as follows against LifePoint on behalf of herself and the members of the Class:

35. Plaintiff and the Class members are intended third-party beneficiaries of the contracts between LifePoint and their health insurance carriers. At the time of contracting, LifePoint and the health insurance carriers intended to confer a direct benefit upon Plaintiff and the Class members, in that LifePoint would submit Plaintiff's and the Class members' medical bills to their health insurance carriers for payment at discounted rates, whereby Plaintiff and the Class members would only be obligated to pay copays and deductibles, and LifePoint would be precluded from seeking payment for the medical bills, other than for copays and deductibles, from any other source, directly or indirectly, including Plaintiff and the Class members.

36. LifePoint breached its contracts with the health insurance carriers by not submitting Plaintiff's and the Class members' medical bills to their health insurance carriers for payment, by filing hospital liens for the undiscounted medical bills upon Plaintiff's and the Class members' third-party tort claims and recoveries and/or automobile-insurance benefits, and/or by obtaining payment for the undiscounted medical bills directly from the Class members and/or from the Class members' third-party tort recoveries and/or automobile-insurance benefits.

9

37. As a proximate result of LifePoint's breach of its contracts with the health insurance carriers, Plaintiff and the Class members were damaged. They paid for undiscounted medical bills they were not indebted to pay, they lost insurance proceeds they were entitled to receive, and/or they lost money they were entitled to receive from third-party tort recoveries. In the case of Class members with unsatisfied hospital liens, they cannot access funds subject to the liens that they are entitled to receive and have lost the use of those monies.

## COUNT II

### (Unjust Enrichment)

38. Plaintiff realleges and incorporates by reference Paragraphs 1 through 37 above, and alleges as follows against LifePoint on behalf of herself and the members of the Class:

39. As alleged above, LifePoint has engaged in a pattern of subverting the financial interest and insurance agreements of Plaintiff and the Class, for its own pecuniary gain.

40. LifePoint has filed hospital liens for the undiscounted medical bills upon Plaintiff's and the Class members' third-party tort claims and recoveries and/or automobile-insurance benefits, and has obtained payment for the undiscounted medical bills from the Class members' third-party tort recoveries and/or automobile-insurance benefits, and/or from the Class members directly.

41. LifePoint has been unjustly enriched because it received and retained the benefit of proceeds to which it was not entitled.

42. LifePoint unjustly retains benefits it received at the expense of Plaintiff and the Class members.

43. LifePoint's retention of the funds it received is unjust because payment for the medical services provided should have come from Plaintiff's and the Class members' health

insurance carriers, except for copays and deductibles, and the reasonable value of the medical services should have been determined by the discounted rates provided in the contracts between LifePoint and the health insurance carriers. LifePoint's retention of the funds it received is further unjust because Plaintiff and the Class members never incurred a debt to LifePoint or its hospitals in excess of the amount of their copays and deductibles.

44. Therefore, LifePoint holds monies which in equity and good conscience belong to Plaintiff and the Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class members, asks that the Court:

(a) Certify the Class proposed herein;

(b) Appoint Plaintiff as representative of the Class;

(c) Appoint Plaintiff's counsel as attorneys for the Class;

(d) Enter judgment awarding Plaintiff and the Class members monetary damages as third-party beneficiaries of LifePoint's breached contracts with their health insurance carriers;

(e) Award Plaintiff and the Class members the sums by which LifePoint has been unjustly enriched through its misconduct;

(f) Award Plaintiff and the Class members pre-judgment interest and post-judgment interest as provided by law;

(h) Award Plaintiff and the Class members a reasonable attorney's fee and costs; and

(i) Provide such further relief as may be just and proper,

## JURY DEMAND

Plaintiff, on behalf of herself and the Class members, demands a trial by jury on all issues so triable.

Respectfully submitted this 11th day of May, 2016.

By: /s/ *[signature]*
STEVEN A. MARTINO (MARS7433)
RICHARD H. TAYLOR (TAYR8925)
W. LLOYD COPELAND (COPW3831)
KENNETH A. METZGER (METK4856)
P.O. Box 894
Mobile, Alabama 36601
PH: (251) 433-3131
FX: (251) 405-5080
E-Mail: stevemartino@taylormartino.com
        richardtaylor@taylormartino.com
        lloyd@taylormartino.com
        kenny@taylormartino.com
**ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASS**

**DEFENDANTS TO BE SERVED:**

**LifePoint Health**                                *Via Certified Mail by Clerk*
**c/o William F. Carpenter III**
**330 Seven Springs Way**
**Brentwood, TN 37027**