IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARILYN R. SCROGGINS, *on behalf of herself and others similarly situated*, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 2:16-CV-338-WKW ) [WO] |
| LIFEPOINT HEALTH, *a corporation*, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's motion to dismiss for lack of subject matter jurisdiction (Doc. # 16), which was converted to a motion for summary judgment (Doc. #18). Plaintiff responded in opposition (Doc. # 21), and Defendant replied. (Doc. # 22). Having considered the motion, the court concludes that it is due to be denied.

## I.   JURISDICTION AND VENUE

The court exercises jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A). The parties do not contest personal jurisdiction or venue.

## II.   STANDARDS OF REVIEW

### A.   Subject Matter Jurisdiction

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." A

"facial attack" on the complaint "require[s] the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).  In contrast, "factual attacks" challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."  *Id.*

These two forms of attack are significantly different.  When an attack is facial, "a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations in the complaint to be true."  *Id.*  However, on a factual attack,

> the trial court may proceed as it never could have under 12(b)(6) or Fed. R. Civ. P. 56.  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims.

*Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981)[1]).  In this case, the defendant's attack is factual.  (Doc. # 16 at 5.)

However, despite the less deferential standard that typically applies to a

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

factual attack, a different standard applies when the defendant's attack also implicates an element of the cause of action. In such cases,

> the proper cause of action for the district court . . . is to find that jurisdiction exists and deal with the objections as a direct attack on the merits of the plaintiff's case. . . . This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place great restrictions on the district court's discretion.

*Id.* (quoting *Williamson*, 645 F.2d at 415–16).

**B.    Summary Judgment**

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he court must view the evidence and the inferences in the light most favorable to the nonmovant." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see*

*also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). On the other hand, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

"A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v.*

*Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). Hence, when a non-movant fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the non-movant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

### III. FACTS

On May 19, 2015, Plaintiff Marilyn Scroggins and her husband, David Scroggins, were involved in an automobile accident in Covington County, Alabama. Ms. Scroggins was transported by ambulance to Andalusia Regional Hospital ("ARH") in Andalusia, Alabama, for treatment of injuries sustained in the accident. Defendant LifePoint Health ("Lifepoint"), a for-profit corporation, owns and operates Andalusia Regional Hospital.

When Ms. Scroggins arrived at Andalusia Regional Hospital, she was disoriented from the accident and her injuries, and she was given medication that caused her to be further disoriented. (Doc. # 21-2 at ¶ 3.) A female hospital employee wearing what appeared to be a nurse's uniform asked David Scroggins for Ms. Scroggins's insurance information. (Doc. # 21-1 at ¶ 2.) David Scroggins gave the employee Ms. Scroggins's insurance card for a healthcare policy through United Healthcare Insurance ("UHC"). (Doc. # 21-1 at ¶ 2.) The employee informed David Scroggins that she needed to make a copy of the card, left the room with the card, and later returned the card to him. (Doc. # 21-1 at ¶ 2.)

5

Defendant Lifepoint has submitted the affidavit of Donna Airhart Waters, Lifepoint's Vice President of Revenue Cycle operations, who stated that she looked at Ms. Scroggins's hospital records and that, on a hospital intake form, Ms Scroggins listed her automobile insurer, but not her health insurer. (Doc. # 16-1 at ¶¶ 5–6.) Lifepoint did not submit a copy of the intake forms to which Ms. Waters referred.[2] Lifepoint contends that, because Ms. Scroggins did not state on the intake forms that she had healthcare insurance, Lifepoint was unaware of the existence of her health insurance when it billed only her auto insurer for the hospital treatment cost.

Lifepoint billed Allstate, Ms. Scroggins's automobile insurer, for the $11,740.75 undiscounted balance of Ms. Scroggins's hospital bill. Allstate paid $5,000.00 of the bill, leaving a balance of $6,740.75. On August 10, 2015, Lifepoint filed a hospital lien in the Covington County Probate Court for the balance.

After Ms. Scroggins was released from the hospital, she filed a personal injury suit for damages arising from the accident. On December 23, 2015, Ms. Scroggins's personal injury attorney, Earl W. Long, IV, provided notice of Ms. Scroggins's health insurance to MRA, Lifepoint's third party vendor handling patient accounts that are to be paid partially or entirely by automobile insurers.

---

[2] The evidence submitted by Lifepoint underscores the need for discovery prior to resolving the factual disputes presented in the motion, including an opportunity for discovery of the original intake record to which Ms. Waters referred.

(Doc. # 16-1 at ¶ 8.) Subsequently, Parallon, Lifepoint's third party vendor for patient accounts paid partially or entirely by health insurance, billed UHC for the undiscounted balance on the account. (Doc. # 16-1 at ¶ 8.) UHC denied the claim on grounds of untimely notice, and on grounds that the amount it would have paid on the bill was equal to or less than the $5,000.00 already paid by Allstate. (Doc. # 16-1 at ¶ 9.) On March 7, 2016, after UHC denied coverage, Lifepoint wrote off the remaining balance on Ms. Scroggins's account.[3] (Doc. # 16-1 at ¶ 9.)

Ms. Scroggins's personal injury suit settled, but the insurers involved would not provide Ms. Scroggins with the settlement proceeds unless Ms. Scroggins would agree that the amount of the hospital lien would be paid with settlement funds. (Doc. # 21-3 at ¶ 4.) Ms. Scroggins agreed because otherwise she would have been unable to access any of the settlement funds. (Doc. # 21-3 at ¶ 4.) Ms. Scroggins's UIM carrier, Allstate, issued a check for $6,740.75 to "Andalusia Regional Hospital [a.k.a. Lifepoint] and Marilyn Scroggins and Attorney(s) Long & Long, PC." (Doc. # 21-3 at 10.) Ms. Scroggins and Long & Long endorsed the check, and, on May 4, 2016, Mr. Long mailed the endorsed Allstate check to Andalusia Regional Hospital. (Doc. # 21-3 at 8, 11.)

Meanwhile, on May 12, 2016, Ms. Scroggins filed the instant lawsuit on her own behalf and on behalf of a putative class. Ms. Scroggins alleges that Lifepoint has a pattern and practice of failing to properly bill health insurers and of failing to

---

[3] The record does not contain evidence that, prior to July 19, 2016, Lifepoint notified Ms. Scroggins that it had written off her account balance.

reflect the health insurer's negotiated discount on the bill whenever it believes it can obtain a greater payment from another source by doing so. In Count I of the complaint, Ms. Scroggins claims that, as a third party beneficiary to the health insurance contract, she was damaged because she lost or could not access money she otherwise would have received from her tort recovery and her automobile insurer. (Doc. # 19 at 11-12.) In Count II, Ms. Scroggins alleges that Lifepoint was unjustly enriched because "it received and retained the benefit" of the $6,740.75 from the tort recovery and of the $5,000.00 paid by Allstate as Ms. Scroggins's automobile insurer. Ms. Scroggins claims that she is entitled to the $6,740.75 and that some or all of the $5,000.00 payment would have covered copays or bills to other healthcare providers. In Counts III and IV, Ms. Scroggins seeks declaratory judgment and injunctive relief. (Doc. # 19 at 14-15.)

Ms. Scroggins's complaint was served on Lifepoint on May 16, 2016. On May 19, 2016, Lifepoint released the hospital lien. (Doc. # 16-1.) On July 19, 2016, Lifepoint filed a motion to dismiss for lack of jurisdiction[4] arguing, among other things, that Ms. Scroggins had no standing because Lifepoint never cashed the $6,740.75 UIM proceeds check from Allstate. (Doc. # 16.) Also on July 19,

---

[4] Because the motion to dismiss went to the elements of Ms. Scroggins's claims, and because the motion relied on affidavits and documents outside the pleadings, the court converted the motion to a motion for summary judgment. (Doc. # 18.) *See Lawrence*, 919 F.2d at 1530 ("When the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction."). Thereafter, Plaintiff responded in opposition (Doc. # 21), and Defendant replied (Doc. # 22).

2016,[5] Lifepoint's CFO, Shirley Smith, mailed the $6,740.75 check back to Mr. Long without endorsing it, enclosed with the following letter:

> Dear Mr. Long,
>
> Enclosed please find your check in the amount of $6,740.75 that was sent to [Lifepoint] on behalf of patient, Marilyn Scroggins. We have researched her patient account and have confirmed that no additional payments are due on the account. After learning that Mrs. Scroggins had commercial health insurance at the time of her admission, we determined that the hospital had been paid in full for the services she received and was not due any additional funds. Mrs. Scroggins's patient account has a zero balance and, as a result, the hospital lien has been lifted.

(Doc. # 21-3 at 12–14.)

On July 26, 2016, Mr. Long ping-ponged the check to Lifepoint, explaining that "the offer of settlement is hereby rejected."

On August 3, 2016, Lifepoint's attorney returned serve, sending the check back to Mr. Long, still not endorsed by Lifepoint,[6] enclosed with the following letter:

> Dear Mr. Long,
>
> I am in receipt of your letter of July 26, 2016 to Shirley Smith of [Lifepoint]. As its lawyer in connection with the *Scroggins v. Lifepoint* case, please accept this in reply to your letter.
>
> [Lifepoint] cannot accept your firm's check on behalf of Ms.

---

[5] Lifepoint's letter was dated July 19, 2016 and mailed by overnight mail on Wednesday, July 20, 2016, at 10:30 a.m. (Doc. # 21-3 at 12, 14.)

[6] The $6,740.75 UIM proceed check from Allstate will be void if not presented for payment on or before April 22, 2016. (Doc. # 21-3 at 18.)

> Scroggins, because Ms. Scroggins does not owe [Lifepoint] any money. Contrary to the view of Ms. Scroggins's counsel in the class action, the return of the check was not an attempt to settle that case. We are not asking, and have not asked, Ms. Scroggins to release any claim she might have in exchange for the return of the check, nor are we requesting that she consent to the dismissal of her case (though we do contend that the case should be dismissed). The funds do not belong to [Lifepoint] and should be returned for that reason. Accordingly, your firm's original check is enclosed.

(Doc. # 21-3 at 17-18.)

## IV.   DISCUSSION

Article III of the Constitution "extends the jurisdiction of federal courts to only 'Cases" and 'Controversies.' " *Strickland v. Alexander*, 772 F.3d 876, 882 (11th Cir. 2014). There are "three strands of justiciability doctrine—standing, ripeness, and mootness—that go to the heart of the Article III case or controversy requirement." *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1247 (11th Cir. 2010) (citation, internal quotation marks, and alterations omitted). Lifepoint's motion implicates standing and mootness. "To satisfy Article III's standing requirements, a plaintiff must show (1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and  3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief."

*Ethredge v. Hail*, 996 F.2d 1173, 1775 (11th Cir. 1993).

Lifepoint argues that there is no case or controversy because Lifepoint allegedly billed Ms. Scroggins's health insurer as soon as it had notice of the existence of her health insurance. Therefore, according to Lifepoint, it never breached the contract with the health insurer or unjustly retained a benefit to which it was not entitled. Lifepoint's challenge in this regard is a factual challenge that goes to the elements of Ms. Scroggins's claims.[7] The evidence is conflicting regarding the timing of Lifepoint's actual and/or constructive knowledge of the existence Ms. Scroggins's health insurance in relation to the billing of Ms. Scroggins's auto and health insurers. Therefore, with respect to Lifepoint's arguments based on the alleged timing of its notice of Ms. Scroggins's health insurance, the motion is due to be treated as a summary judgment motion and denied on grounds that there exists a material factual dispute.

Lifepoint further argues that Ms. Scroggins was never injured by any alleged unjust enrichment or breach of contract,[8] because (1) on March 7, 2016, Lifepoint

---

[7] *See Matador Holdings, Inc. v. HoPo Realty Investments, L.L.C.*, 77 So. 3d 139, 145-46 (Ala. 2011) (setting forth the elements of an unjust enrichment claim in Alabama, including that a claim for unjust enrichment exists if "(1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." (citation and internal quotation marks omitted)); *Barrett v. Radjabi-Mougadam*, 39 So. 3d 95, 98 (Ala. 2009) (setting forth the elements of a breach of contract claim, including the requirement that the defendant must have breached the contract and that the plaintiff must have been injured by the breach).

[8] The alleged lack of injury or unjust enrichment goes to the elements of Ms. Scroggins's claims. *See supra*, note 7.

"zeroed out" Ms. Scroggins's account after Ms. Scroggins's health insurer denied her claim; (2) on May 19, 2016, Lifepoint cancelled the hospital lien; and (3) in July 2016, Lifepoint returned the $6,740.75 Allstate UIM proceed check to Ms. Scroggins. Therefore, according to Lifepoint, Ms. Scroggins has no standing to bring this suit, or, alternatively, her claims are moot.

Standing is determined as of the time of the filing of the original complaint. *Cook v. Bennett*, 792 F.3d 1294, 1298 (11th Cir. 2015). Ms. Scroggins filed this lawsuit on May 12, 2016. At that time, Lifepoint had not released the hospital lien,[9] and Ms. Scroggins remained unable to access settlement funds because of the lien. In addition, Lifepoint was (and still is) in possession of the $5,000.00 proceeds from Allstate's first check, which Lifepoint admits was either "equal to or greater than" the amount Ms. Scroggins's health insurer would have paid, had it been timely billed. (Doc. # 16-1 at 4.) It is not possible to know at this stage of discovery whether or to what extent the $5,000.00 exceeded the combined sum of any copayment plus any payment from the health insurer. Ms. Scroggins argues, however, that some or all of the $5,000.00 should have been available for copays or other medical bills arising out of the accident, especially if Lifepoint had billed her health insurer for her hospital stay and/or had billed her and the insurer in accordance with the discount due under Lifepoint's contract with the health insurer. Based on the limited evidence currently available, it is not possible to

---

[9] Ms. Scroggins has not alleged that the hospital lien wrongfully injured her credit record or prevented her from obtaining employment or financing.

state with confidence that, at the time this lawsuit was filed, Ms. Scroggins had not been injured by a breach of contract or unjust enrichment.

"If events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff . . . meaningful relief, then the case is moot and must be dismissed." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001). Lifepoint argues that its cancellation of the lien after the filing of this lawsuit, combined with its return of the $6,740.75 Allstate UIM proceeds check to Ms. Scroggins, effectively mooted Ms. Scroggins's claims by eliminating any injury to Ms. Scroggins. This argument is unavailing for several reasons. First, neither party appears to recognize that the $6,740.75 UIM proceeds check was not a check from her or her attorney; it appears to be a check directly from Allstate to be drawn on an Allstate account.[10] Second, there is some question (1) whether Ms. Scroggins was deprived of interest that could have been earned on the $6,740.75 before Lifepoint returned it and (2) whether, as a result of Lifepoint's failure to endorse the check before returning it, Ms. Scroggins continues to be deprived of the use of the $6,740.75 on grounds that she cannot cash the check. Third, there is no explanation in the evidence of why Lifepoint held the check for 10 weeks. In any event, Lifepoint continues to retain the full amount of the $5,000.00 check

---

[10] Because the check was from Allstate and not from Lifepoint, there is no factual basis for the parties' dispute over whether Lifepoint's attempt to return the check represents a valid attempt to moot the named Plaintiff's claim with a rejected settlement offer. Because the check is not from Ms. Scroggins or her attorneys, there is also no merit in Lifepoint's contention that Ms. Scroggins never lost interest on or use of the money because the funds were supposedly available to her unless and until Lifepoint cashed the check.

from Allstate, and, as noted above, it is not clear at this stage of discovery whether proceeds of that check represent unjust enrichment and/or an injury resulting from breach of contract.

Accordingly, at this time, the motion is due to be denied on grounds that further discovery is needed and material facts are in dispute. Fed R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). *Cf. Williamson*, 645 F.2d at 415 ("Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case" under Rule 56, where appropriate).

In the event that further discovery reveals an absence of jurisdiction for the reasons stated in Lifepoint's motion or for any other reason, the parties are expected to promptly bring the matter to the court's attention.

## V.   CONCLUSION

Accordingly, it is ORDERED that the motion for summary judgment (Doc. # 16) is DENIED.

DONE this 7th day of February, 2017.

                             /s/ W. Keith Watkins
                          CHIEF UNITED STATES DISTRICT JUDGE