IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARILYN R. SCROGGINS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) CASE NO. 2:16-cv-338-ALB |
| LIFEPOINT HEALTH, INC., *et al*, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This is a contract dispute between Plaintiff Marilyn R. Scroggins ("Scroggins") and several corporations associated with Andalusia Regional Hospital (the "hospital")[1] in Andalusia, Alabama, where Scroggins received medical treatment following a car accident. After Scroggins received a settlement from the tortfeasor, the hospital sought to collect from the settlement. Scroggins believes the hospital should have billed her health insurance company instead. Rather than sue the hospital, however, she sued parent companies in the hospital's corporate hierarchy. This matter comes to the Court on numerous motions to dismiss the operative complaint. After extensive briefing and oral argument, the Court concludes that these motions are due to be **GRANTED**.

---

[1] In the Second Amended Complaint, Scroggins refers to the treating hospital as "Community Hospital of Andalusia, LLC." (Doc. 47 ¶ 3). The LifePoint Defendants refer to the hospital as "Andalusia Regional Hospital." (Doc. 102 at 1).

# PARTIES

The operative pleading in this case is the Second Amended Complaint (the "Complaint") (Doc. 47). The following motions are pending before this Court:

- Defendant Medical Reimbursements of America, Inc.'s ("MRA") Motion to Dismiss, (Doc. 96);
- Defendants Parallon Business Solutions, LLC ("Parallon") and HSS Systems, LLC's ("HSS") Motion to Dismiss. (Doc. 99).
- Defendant LifePoint Health, Inc., f/k/a LifePoint Hospitals, Inc.'s ("LHI") Motion to Dismiss. (Doc. 101).
- Defendants LifePoint Holdings 2, LLC ("LifePoint 2"), LifePoint Hospitals Holdings, LLC ("LifePoint Hospitals Holdings"), Historic LifePoint Hospitals, LLC ("Historic LifePoint Hospitals"), HSCGP, LLC, and Shared Business Services, LLC a/k/a LifePoint Health Business Services' ("Shared Business Services") Motion to Dismiss. (Doc. 103).
- Defendant LifePoint Corporate Services, General Partnership's ("LifePoint Corporate Services") Motion to Dismiss. (Doc. 105).
- Scroggins's Motion for Leave to File Surreply in Opposition to Defendants' Motions to Dismiss. (Doc 138).
- Defendants' Motion for Leave to File Replies to Scroggins's Supplemental Memorandum in Opposition to Defendants' Motions to Dismiss. (Doc. 151).

The following Defendants are collectively referred to as "LifePoint Defendants":

- LHI
- LifePoint 2
- LifePoint Hospitals Holdings
- Historic LifePoint Hospitals
- LifePoint Corporate Services
- Shared Business Services
- HSCGP, LLC

The following Defendants are collectively referred to as "Billing Defendants":

- Parallon[2]
- HSS
- MRA

Scroggins did not name the hospital as a party to this action. However, Scroggins acknowledges that her claims against all other named parties flow exclusively through the services she received at the hospital, including billing issues under a contract to which the hospital is a party. Apart from those services provided by the hospital and its contract, she had no other contact, claim, or cause of action with any other named party to this action. Accordingly, it is **ORDERED** pursuant to Rule 19(a)(2), Fed. R. Civ. P., that Andalusia Regional Hospital be and is made a party to this action.

## BACKGROUND

The relevant facts for the purposes of these motions to dismiss have been outlined by a prior Memorandum Opinion and Order of this Court. (Doc. 26 at 5–10). The specific factual allegations at issue here are taken from the operative complaint and are assumed to be true for the purposes of this opinion.

Scroggins received treatment at the hospital for injuries she sustained in an automobile accident on May 19, 2015. At the time of her treatment, Scroggins was covered by a health insurance policy issued by United Healthcare Insurance (the

---

[2] Plaintiff concedes lack of personal jurisdiction over Parallon. (Doc. 132 ¶ 1). Accordingly, Parallon is dismissed in this order.

"insurer"). LifePoint is a healthcare company that owns or operates hospitals in twenty-two states, including hospitals in the State of Alabama such as Andalusia Regional Hospital. (Doc. 47 at ¶ 14). Scroggins alleged "LifePoint has created a maze of numerous entities that are affiliated with the ownership, management, operation, and control of its hospitals, all of these affiliated entities are ultimately owned, directly or indirectly, by LifePoint, and the profits from these entities flow through them to LifePoint." *Id.* at ¶ 15. Scroggins further alleged that she is a third-party beneficiary of the contract between the hospital and her health insurance company, which the defendants breached:

> [P]ursuant to the terms of the managed-care contracts negotiated by LifePoint Corporate Services, LifePoint-affiliated hospitals are required to submit their insured patients' bills to their respective health insurance carriers; accept the health insurers' contractually agreed-upon discounted payment as full payment for the bills, to the extent the patient does not owe a co-pay or deductible; and hold the patients harmless for any charges that exceed the patients' financial responsibility under their respective managed-care plans.

*Id.* at ¶ 23. The crux of the Second Amended Complaint is Scroggins's allegation that the hospital should have billed her insurance for the treatment she received:

> Through their billing and bill-collection practices, the [LifePoint] Defendants attempt to maximize the amounts collected by [the Billing] Defendants for covered services by seeking from patients with health insurance, when sources of payment other than health insurance are available, the full amount of the hospitals' charges (which is more than the hospitals are entitled to receive for the covered services), rather than accepting the discounted amount the hospitals have contractually agreed to accept as full payment, except for copays and deductibles, from the patients' health insurance carriers.

Doc. 47 at ¶ 34.

Scroggins alleged the following counts:

- Count I – Intentional Interference with Contractual Relations against all Defendants.[3]
- Count II – Breach of Contract as a third-party beneficiary against the LifePoint Defendants.
- Count III – Unjust Enrichment against all Defendants.
- Count IV – Declaratory Judgment against Billing Defendants.[4]
- Count V – Civil Conspiracy against all Defendants.[5]

## STANDARD

When evaluating a motion to dismiss, the court assumes the factual allegations are true and construes them in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). "To avoid dismissal the complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). Whether a complaint is plausible depends on whether "it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[3] Scroggins has stipulated to the dismissal of Count I as to the LifePoint Defendants. (Doc. 163 ¶ 1).
[4] Scroggins has stipulated to the dismissal of Count IV. (Doc. 163 ¶ 2).
[5] Scroggins has stipulated to the dismissal of Count V as to the LifePoint Defendants. (Doc. 163 ¶ 3).

5

## DISCUSSION

Defendants have filed multiple motions to dismiss that raise dozens of arguments. But one issue predominates. As an intended beneficiary of her health insurance company's contract with the hospital, Scroggins almost certainly has a breach of contract claim against the hospital. But she cannot rely on the potential liability of the hospital to bring claims against the host of additional parties she has named as defendants in the operative complaint. And she cannot bootstrap her contract claim into a cause of action sounding in equity or tort. For these reasons, the Court concludes that Defendants' various motions to dismiss are due to be granted.

### A. Count I – Intentional Interference with Contractual Relations

The only remaining Defendants as to Count I are the Billing Defendants. In Count I, Scroggins claims that "[v]alid, legal contracts existed between the LifePoint-affiliated hospitals and Scroggins's and the Class members' health insurance carriers" (Doc. 48 ¶ 57) and that the Billing Defendants interfered with those contracts. Specifically, Scroggins alleges that

> Defendants intended to induce a breach of the contracts. The Directing Defendants intentionally interfered with the contracts by requiring the hospitals to take the actions specified herein and by requiring the hospitals to use the Billing and Collection Defendants for bill-collection services, following which Billing and Collection Defendants, with the hospitals' knowledge and consent, took the actions previously specified herein. The actions taken by the hospitals and the Billing and Collection Defendants, include, but are not limited to, not submitting

>insured patients' bills to their health insurance carriers; not timely submitting the bills to the health insurers; first seeking recovery from third parties before pursuing recovery from the health insurers; not accepting the health insurers' contractually agreed upon discounted payments as full payment for the bills, to the extent the patient did not owe a co-pay or deductible; and pursuing and obtaining payment or the full amount of the undiscounted medical bills from the patients, either directly or indirectly, for covered services in an amount exceeding the contractually agreed-upon discounted payments. All of these actions breached the contracts.

(Doc. 48 ¶ 59). Neither of the Billing Defendants were parties to the contract between LifePoint and Scroggins's health insurance carriers, and the Billing Defendants are not named in Scroggins's claims of Breach of Contract in Count II. Scroggins has dismissed her claims under Count I as to the LifePoint Defendants.

Defendants argue, and the Court agrees, that Scroggins cannot bring a claim for tortious interference against these parties because they were not strangers to the underlying contract. The Complaint alleged that the Billing Defendants both "performed the services and w[ere] involved in the activities" of the contract at issue. (Doc. 47 ¶¶ 8–11). The Alabama Supreme Court has held that a third party to a tortious interference claim is not a stranger to the contract at issue when that party has an interest in or control over that relationship:

>[A] plaintiff asserting a tortious-interference claim bears the burden of proving that the defendant is a "third party" or "stranger" to the contract or business relationship with which the defendant allegedly interfered. A defendant is a party in interest to a relationship if the defendant has any beneficial or economic interest in, or control over, that relationship.

*Waddell & Reed, Inc. v. United Inv'rs Life Ins. Co.*, 875 So. 2d 1143, 1154 (Ala. 2003), *as modified on denial of reh'g* (Sept. 5, 2003)(citations omitted). Based on the plain language of the Complaint that the Billing Defendants "performed the services and w[ere] involved in the activities" of the contract, both were parties in interest to the contract, specifically because they were tasked with performing the services provided by that contract as agents of the LifePoint Defendants. The Billing Defendants were not strangers to the contract. There is no allegation that they engaged in any act that was not at the direction or knowledge of the LifePoint Defendants. Accordingly, Count I of the Second Amended Complaint is due to be dismissed.

B. **Count II – Breach of Contract**

In Count II, Scroggins brings a Breach of Contract claim "under the theory of direct liability of parent corporations for the wrongful acts of their subsidiaries as recognized in *United States v. Bestfoods*, 524 U.S. 51 (1998), and elsewhere." (Doc. 47 ¶ 67). Scroggins seeks to represent a class of "intended third-party beneficiaries of the contracts between the LifePoint-affiliated hospitals and their health insurance carriers." (Doc. 47 ¶ 68). She alleges that the Defendants breached these contracts because their subsidiaries did not submit bills to health insurance companies and, instead, filed liens against tort settlements:

> [They] breached their contracts with the health insurance carriers by not submitting the Class members' medical bills to their health insurance

> carriers for payment, by filing hospital liens for the undiscounted medical bills upon the Class members' third-party tort claims and recoveries and/or automobile-insurance benefits, by obtaining payment for the undiscounted medical bills directly from the Class members and/or from the Class members' third-party tort recoveries and/or automobile insurance benefits, and/or, after submitting [Scroggins's] and the Class members' medical bills to their health insurance carriers for payment, by returning the health insurance carriers' payments and demanding payment for the full, undiscounted amount of the medical bills from [Scroggins] and the Class members.

(Doc. 47 ¶ 69).

The problem, of course, is that the LifePoint Defendants are not parties to any of the contracts at issue, which are between the insurers and the hospitals. (Doc. 102 at 14; Doc. 104 at 15; Doc. 106 at 9; Doc. 130 at 30). The LifePoint Defendants argue that they cannot be held liable, at least based on Scroggins's allegations,[6] for their subsidiaries' breach of contract. The Court agrees.

Scroggins cites several cases for the proposition that a parent company can be liable for "wrongful acts" that it performs by controlling its subsidiary. But, for the most part, these cases concern parent corporations that allegedly forced their subsidiaries to commit torts or violate regulatory statutes. *E.g.*, *Bolin v. Superior Well Servs., Inc.*, 2010 WL 11474092, at *5–8 (N.D. Ala. June 25, 2010) (recognizing potential direct parent liability for negligence and wantonness in

---

[6] Scroggins expressly disclaims any effort to pierce the corporate veil, arguing that she "is not proceeding on a theory of corporate-veil piercing." (Doc. 130 at 31 n.10).

9

personal injury case); *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1309 (S.D. Fla. 2003) (parent could be held liable in fraud and RICO action, involving violation of consumer protection statutes). For example, Scroggins relies extensively on *Bestfoods* to argue that she "has alleged a valid direct-liability claim against LHI for Andalusia Regional's breach of its provider agreement with [the insurer]." (Doc. 130 at 33). In *Bestfoods*, the United States Supreme Court addressed parental liability under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA). The Supreme Court explained "that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, inter alia, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf." *Bestfoods*, 524 U.S. at 62. The Court also recognized that a parent corporation may be liable when "the party is directly a participant in the wrong complained of." *Id.* at 64. But *Bestfoods* does not, as Scroggins suggests, stand for the proposition that a plaintiff may simply bypass piercing the corporate veil to direct liability of a parent corporation. *See id.* at 63–64 ("The Court of Appeals was accordingly correct in holding that when (but only when) the corporate veil may be pierced, may a parent corporation charged with derivative CERCLA liability for its subsidiary's actions.") (emphasis added) (footnotes omitted). And *Bestfoods* says nothing about a parent corporation's liability for a state-law breach of contract claim. *See, e.g.*, *Babb v. Lee Cty Landfill*

*SC, LLC*, 852 F. Supp. 2d 682, 686 (D.S.C. 2012) ("Plaintiffs have not convinced this court to extend the *Bestfoods* holding to the facts of this non-CERCLA case.").

Scroggins brings an Alabama contract claim, not a fraud, personal injury, or CERCLA claim, and the Alabama Supreme Court has rejected the theory that a corporate parent can be held directly liable for its subsidiary's breach of contract without piercing the corporate veil. The contract in this case is between the insurer and the hospital, and the terms of the contract explicitly state that Alabama state law governs. (Doc. 108-3 SEALED). The Alabama Supreme Court has held "that a parent corporation which owns all the stock of a subsidiary corporation is not liable for acts of its subsidiary corporation, unless the parent corporation so controls the operation of the subsidiary corporation as to make it a mere adjunct, instrumentality, or alter ego of the parent corporation." *Duff v. S. Ry. Co.*, 496 So. 2d 760, 762 (Ala. 1986) (citing *Baker v. Hosp. Corp. of Am.,* 432 So. 2d 1281 (Ala. 1983)). "We have held that in the absence of fraud or inequity, the sole shareholder in a corporation will be protected from individual liability by the corporate entity." *Co-Ex Plastics, Inc. v. AlaPak, Inc.*, 536 So. 2d 37, 39 (Ala. 1988) (citing *Washburn v. Rabun*, 487 So. 2d 1361 (Ala. 1986)). Scroggins has neither alleged any fraudulent use of the corporate form nor that the hospital, or any other defendant, is underfunded or structured such that inequity would result from disallowing direct liability against

the corporate parents of the hospital. Instead, Scroggins has expressly disclaimed attempting to pierce the corporate veil.

There is one Alabama case in Scroggins's favor, but it is inapposite. In *Drummond Co. v. Walter Industries, Inc.*, the Alabama Supreme Court briefly addressed whether a parent corporation could be held directly liable for breach of contract based on the theory that the parent corporation was a signatory to the contract at issue. 962 So. 2d 753, 784 (Ala. 2006) ("Drummond bases its breach-of-contract claim against JWR on direct liability only because JWR was a signatory to the 1991 agreement."). However, the *Drummond* court did not reach the merits of that theory because it held that "the 1972 and 1991 agreements were void for indefiniteness or, at best, that they were unexecuted agreements to agree…" *Id.* And, in any event, there are no such allegations in this case, *i.e.*, none of the defendants named in the Second Amended Complaint are signatories to the contract that was allegedly breached.

In short, Alabama contract law recognizes liability for a breach of contract against a parent corporation only in the presence of fraud, inequity, or piercing the corporate veil. None of which have been alleged in this case. The only defendant for which Scroggins has sufficiently pleaded a claim for breach of contract is the hospital—the actual party to the contract. All other defendants in this matter are due to be dismissed from Count II.

C. **Count III – Unjust Enrichment**

In Count III, Scroggins raised a claim of Unjust Enrichment against all Defendants. (Doc. 47 ¶¶ 75–80). Scroggins's claim for unjust enrichment is predicated on her claim that "medical services should have been determined by the discounted rates provided in the contracts between the hospitals and the health insurance carriers." (Doc. 47 ¶ 79). Defendants argue that Scroggins cannot bring an unjust enrichment claim when the issue is covered by an express contract. Although Scroggins acknowledges that the existence of an express contract generally precludes a claim for unjust enrichment, she argues that the defendants may still be liable for unjust enrichment because they are not parties to the express contract.

Defendants have the better argument. Alabama law does not recognize an equitable unjust enrichment claim when there is an express contract that governs the same subject. *See Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006) ("The existence of an express contract on a given subject generally excludes an implied agreement *on the same subject*."); *Vardaman v. Florence City Bd. of Educ.*, 544 So. 2d 962, 965 (Ala. 1989) (same). The reason that Alabama law does not recognize an unjust enrichment claim when an express contract exists is that unjust enrichment is an equitable remedy that may be relied upon only when there is no adequate remedy at law. *See, e.g.*, *Am. Family Care, Inc. v. Irwin,* 571 So. 2d 1053, 1061 (Ala. 1990) ("[T]he presence of an adequate remedy at law precludes the enforcement of a

13

constructive trust[,]" which "is [an equitable] remedy created to prevent unjust enrichment."); *see also Teleprompter of Mobile, Inc. v. Bayou Cable TV*, 428 So. 2d 17, 20 (Ala. 1983) ("[A]n injunction, like any other equitable remedy, will only issue where there is no adequate remedy at law."); *Pearson's Pharmacy, Inc. v. Express Scripts, Inc.*, 505 F. Supp. 2d 1272, 1278 (M.D. Ala. 2007) (dismissing unjust enrichment claim with prejudice because plaintiffs had adequate legal remedy for damages under breach of contract theory). Accordingly, the deciding factor is not whether the specific defendants are parties to the contract, but that an express contract governs the same subject. The existence of an express contract on a subject means a plaintiff has an adequate remedy at law—a breach of contract claim—no matter whether the named defendants are parties to the express contract. Count III is due to be dismissed as to all Defendants.

### D. Count IV – Declaratory Judgment

Scroggins filed a stipulation of dismissal as to Count IV "and all corresponding prayers for relief, Scroggins has claimed against all the Defendants included in this claim." (Doc. 163 ¶ 2). Accordingly, Count IV is due to be dismissed with prejudice.

### E. Count V – Civil Conspiracy

In Count V, Scroggins raised a Civil Conspiracy claim, arguing that "Defendants agreed among themselves and had a common design to intentionally

interfere with, by concerted action, the contracts between the LifePoint-affiliated hospitals and [Scroggins's] and the Class members' health insurance carriers. Intentional interference with the contracts was an unlawful purpose." (Doc. 47 ¶ 86). Scroggins has stipulated to the dismissal of Count V as to the LifePoint Defendants. (Doc. 163 ¶ 3). "The elements of civil conspiracy in Alabama are: (1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means." *Ex parte Alamo Title Co.*, 128 So. 3d 700, 713 (Ala. 2013) (citing *Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So. 2d 243, 247 (Ala. 2000)). Scroggins's claim of Civil Conspiracy in Count V is predicated on her allegation that "[i]ntentional interference with the contracts was an unlawful purpose." As addressed above, Scroggins's claim of intentional interference with contractual relations fails. Because there is no underlying tort, Scroggins cannot bring a claim for conspiracy to commit a tort. Accordingly, Count V is due to be dismissed.

## CONCLUSION

Accordingly, it is ORDERED that:

1. Andalusia Regional Hospital is **JOINED** as a defendant pursuant to Federal Rule of Civil Procedure 19(a)(2).

2. Defendant Medical Reimbursements of America, Inc.'s Motion to Dismiss (Doc. 96) is **GRANTED** and MRA is dismissed without prejudice.

3. Defendant Parallon Business Solutions, LLC is **DISMISSED** for lack of personal jurisdiction.

4. HSS Systems, LLC's Motion to Dismiss (Doc. 99) is **GRANTED** and HSS is dismissed without prejudice.

5. Defendant LifePoint Health, Inc., f/k/a LifePoint Hospitals, Inc.'s Motion to Dismiss (Doc. 101) is **GRANTED** and LifePoint is dismissed without prejudice.

6. Defendants LifePoint Holdings 2, LLC ("LifePoint 2"), LifePoint Hospitals Holdings, LLC ("LifePoint Hospitals Holdings"), Historic LifePoint Hospitals, LLC ("Historic LifePoint Hospitals"), HSCGP, LLC, and Shared Business Services, LLC a/k/a LifePoint Health Business Services' ("Shared Business Services") Motion to Dismiss (Doc. 103) is **GRANTED** and LifePoint 2, LifePoint Hospitals Holdings, Historic LifePoint Hospitals, and Shared Business Services are dismissed without prejudice.

7. LifePoint Corporate Services, General Partnership's Motion to Dismiss (Doc. 105) is **GRANTED** and LifePoint Corporate Services is dismissed without prejudice.

8. Scroggins's Motion for Leave to File Surreply in Opposition to Defendants' Motions to Dismiss (Doc 138) is **DENIED** as moot.

9. Defendants' Motion for Leave to File Replies to Scroggins's Supplemental Memorandum in Opposition to Defendants' Motions to Dismiss (Doc. 151) is **DENIED** as moot.

10. Counts I, III, IV, & V are dismissed as to all parties. Count II is dismissed as to all parties except the hospital.

11. Scroggins is granted leave to amend the operative complaint not later than 21 days after the entry of this Order.

**DONE** and **ORDERED** this 6th day of March 2020.

                                                /s/ Andrew L. Brasher
                                      ANDREW L. BRASHER
                                      UNITED STATES DISTRICT JUDGE