IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARILYN R. SCROGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:16-cv-00338-ECM |
| | ) | (WO) |
| ANDALUSIA REGIONAL HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

**I.      INTRODUCTION**

This case is about a third-party beneficiary who wishes to enforce a contract but not be held to its arbitration clause. The Plaintiff, Marilyn R. Scroggins ("Scroggins"), was in an automobile accident in 2015. Immediately after the accident, she was brought to the emergency room of Andalusia Regional Hospital ("ARH" or "the Defendant"), and she claims that she was then incorrectly charged for her treatment, in breach of the hospital's contract with her insurance company. She filed her original and amended class action complaints against numerous Defendants—but, importantly, not the hospital—beginning in May 2016.[1] Since then, the Court joined ARH as the sole Defendant and dismissed her

---

[1] Scroggins filed her original class action complaint against LifePoint Health on May 12, 2016, alleging breach of contract and unjust enrichment. (Doc. 1). She eventually amended her complaint to sue LifePoint Health; LifePoint Holdings 2, LLC; LifePoint Hospitals Holdings, LLC; Historic LifePoint Hospitals, LLC; LifePoint Corporate Services, General Partnership; HSCGP, LLC; Shared Business Services, LLC; Parallon Business Solutions, LLC; HSS Systems, LLC; Medical Reimbursements of America, Inc.; and Blue Cross Blue Shield Kansas, Inc. She alleged intentional interference with contractual relations, breach of contract, unjust enrichment, and civil conspiracy. (Doc. 47). She requested a declaratory judgment, monetary relief, and other remedies.

claims against all other Defendants on March 6, 2020. (Doc. 164). The only remaining claim is Scroggins' breach of contract claim against ARH, filed on April 27, 2020. (Doc. 167).

Pending before the Court is ARH's motion to compel arbitration and to dismiss Scroggins' claim. (Doc. 172). At issue is whether the arbitration clause within the contract in this case, or the Hospital Participation Agreement ("HPA"), binds Scroggins. Scroggins argues that, even though she is a third-party beneficiary of the HPA, she is not bound by the arbitration agreement.

Scroggins has filed a response in opposition to the motion, (doc. 184), and the motion is ripe for review. After careful review of the motion, the briefs filed in support of and in opposition to the motion, the supporting and opposing evidentiary submissions, and the applicable law, the Court concludes that ARH's Motion to Compel Arbitration, (doc. 172), is due to be GRANTED, ARH's Motion to Dismiss, (doc. 172), is due to be DENIED, and this proceeding is stayed pending arbitration. 9 U.S.C. § 3.[2]

---

Blue Cross Blue Shield Kansas, Inc. was terminated as a Defendant on August 8, 2017. The rest of the Defendants were dismissed on March 6, 2020. (Doc. 164). In its memorandum and order, the Court joined Andalusia Regional Hospital as the sole remaining Defendant, pursuant to Fed. R. Civ. P. 19(a)(2). The Court dismissed all counts against all other Defendants, leaving the breach of contract claim against ARH. Scroggins brought that claim when she filed her third amended class action complaint against ARH on April 27, 2020. (Doc. 167). Her action is brought as a plaintiff's class action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

[2] The statute reads,

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in

## II.     JURISDICTION

The Court exercises federal subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(d)(2)(A).

Personal jurisdiction and venue are uncontested.

## III.    LEGAL STANDARDS

### A. Federal Arbitration Law

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, is "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  The FAA provides:

> [a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Thus, Congress put arbitration agreements "on equal footing with all other contracts . . . ." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like

---

accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  Accordingly, the Court declines to dismiss the suit at this time and will instead stay its proceedings pending arbitration.

3

defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25. Throughout, the FAA "creates a body of federal substantive law," which is "applicable in state and federal court." *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984).

There are two types of challenges to the validity of arbitration agreements: the first challenges the validity of the arbitration agreement itself, and the second challenges the validity of the contract as a whole. *Buckeye Check Cashing*, 546 U.S. at 444–45. When, as in this case, a party challenges the validity of the arbitration clause itself, the challenge may be addressed by the court. *Id.* at 445–46 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). Moreover, federal common law follows the severability doctrine; "an arbitration provision is severable from the remainder of the contract." *Id.* at 445.

**B. State Arbitration Law**

The Court applies "ordinary state-law principles that govern the formation of contracts" when it decides whether the parties agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Although "the FAA preempts state law to the extent it treats arbitration agreements differently than other contracts," "state law generally governs whether an enforceable contract or agreement to arbitrate exists." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367–68 (11th Cir. 2005). "Under the FAA, parties are generally free to structure their arbitration agreements as they see fit," and courts may "'decline to enforce an arbitration agreement under the FAA only if the plaintiffs can point to a generally applicable principle of *contract* law under which the agreement could be revoked,' such as fraud, duress, or some other misconduct or wrongful act recognized

by law for revocation of a contract." *Scurtu v. Int'l Student Exch.*, 523 F.Supp.2d 1313, 1318 (S.D. Ala. 2007) (quoting *Caley*, 428 F.3d at 1367). Thus, the Court applies the contract law of the relevant state to determine whether the parties formed an agreement. *Id.*

Here, the HPA identifies Alabama law as the governing law of the contract to the extent it is not preempted by federal law. (Doc. 176-1 at 10). In Alabama, "a motion seeking to compel arbitration is 'analogous to a motion for summary judgment.'" *Scurtu*, 523 F.Supp.2d at 1319 (quoting *Dunes of GP, L.L.C. v. Bradford*, 966 So. 2d 924, 925–26 (Ala. 2007)). "[A] party seeking to compel arbitration must prove '(1) the existence of a contract containing an arbitration agreement and (2) that the underlying contract evidences a transaction affecting interstate commerce.'" *Id.* at 1318 (quoting *Allied Williams Cos., Inc. v. Davis*, 901 So. 2d 696, 698 (Ala. 2004)). There is no dispute that ARH made the requisite showing. Therefore, "the burden shifts to the opposing party to present evidence that the arbitration agreement is not valid or that it does not apply to the dispute in question." *Id.* (quoting *Allied Williams Cos.*, 901 So. 2d at 698).

### IV.   FACTS

ARH maintains a contract with United HealthCare of Alabama, Inc. ("United HealthCare") setting forth the terms ARH follows when it delivers medical services to individuals insured by United HealthCare. It is undisputed that Scroggins is a third-party beneficiary of this contract, or "HPA," because she is insured under the contract. (Doc. 167 at 3).

On May 19, 2015, Scroggins was in an automobile accident in Covington County, Alabama. An ambulance took Scroggins to ARH, where she received emergency-room

5

treatment for her injuries. Scroggins had health insurance at that time with United HealthCare. According to Scroggins, the terms of the HPA between United HealthCare and ARH require the hospital to (1) submit Scroggins' emergency room bill to United HealthCare, (2) accept United HealthCare's discounted payment as full payment to the extent Scroggins did not owe a co-pay or deductible, and (3) hold Scroggins harmless for charges exceeding her responsibilities under ARH's plan with United HealthCare. (Doc. 167 at 6). She alleges that, instead of following its own policy, the hospital obtained $5,000 in undiscounted medical payment from Scroggins' automobile insurer and then one of its agents filed a hospital lien for $6,740.75 on all claims or demands accruing to Scroggins in Covington County, Alabama. When Scroggins received settlement proceeds from the accident, she was required to deduct money from the settlement to pay the hospital lien.

Scroggins alleges that ARH breached the HPA between itself and United HealthCare when it failed to submit her bills to United HealthCare or to follow the rest of the steps outlined in their managed-care contract. As a third-party beneficiary, she seeks to enforce the contract. Scroggins brings her class action allegations on her own behalf and on behalf of all other similarly situated.

However, ARH—a party to the suit as of July 1, 2020—moves the Court to compel arbitration pursuant to the arbitration clause within the HPA. In Section 8, Resolution of Disputes, the contract reads,

> [i]f a dispute between Plan or Payor and Hospital arises out of or is related to this Agreement, the parties to the dispute shall meet and negotiate in good faith to attempt to resolve the dispute. If, after at least 30 days following the date one party sent written notice of the dispute to the other party, the dispute

> is not resolved, and if any party wishes to pursue the dispute, it shall be submitted to binding arbitration in accordance with the rules of the American Arbitration Association. In no event may arbitration be initiated more than one year following the sending of written notice of the dispute. Any arbitration proceeding under this Agreement shall be conducted in Birmingham, Alabama. The arbitrators may construe or interpret but shall not vary or ignore the terms of this Agreement, shall have no authority to award any punitive or exemplary damages, and shall be bound by controlling law. If the dispute pertains to a matter which is generally administered by certain Plan procedures, such as a credentialing or quality improvement plan, the procedures set forth in that plan must be fully exhausted by Hospital before Hospital may invoke its right to arbitration under this section. The parties acknowledge the Federal Arbitration Act applies because this Agreement affects interstate commerce. The parties will work in good faith toward resolving any disagreements about the terms of their business relationship between themselves and will each refrain from discussing such disagreements publicly or with third parties.

(Doc. 176-1 at 8). The contract was signed by the Vice President of Operations at United HealthCare of Alabama and the CEO of ARH in December 2000. Directly above the signature lines, the contract reads, "**THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION THAT MAY BE ENFORCED BY THE PARTIES.**" (*Id.* at 11)[3] (emphasis in original).

Scroggins is a citizen of Alabama. ARH is a Delaware LLC, operating in Alabama, with its principal place of business in Nashville, Tennessee. Scroggins alleges that the amount in controversy exceeds five million dollars based on her proposed Class. (Doc. 167 at 2).

---

[3] The Court will refer to the page numbers generated by CM/ECF.

7

## V. DISCUSSION

With the federal policy favoring arbitration in mind, the Court proceeds by applying Alabama's ordinary contract law in evaluating the enforceability of the arbitration clause contained within the HPA. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). Scroggins asserts that the HPA's arbitration clause does not bind her as a third-party beneficiary.[4] She also asserts that the motion to compel arbitration is untimely, and that ARH has waived its right to arbitration. Finally, she argues that, even if the clause does apply to her, it is unconscionable. The Court will address each assertion in turn.

### A. Parties Bound by the Arbitration Agreement

The Court should stay or dismiss a lawsuit and compel arbitration "upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). Therefore, the Court turns to these two prongs.

#### 1. *Whether Scroggins entered an arbitration agreement*

It is undisputed that United HealthCare and ARH formed a contract containing a valid and enforceable[5] arbitration agreement affecting interstate commerce. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task

---

[4] Scroggins states that ARH's "[e]quitable [e]stoppel is [u]navailing." (Doc. 184 at 7). The Court will consider Scroggins' estoppel arguments as part of the analysis of whether she is bound by the arbitration clause.

[5] *See* Section C, *infra*, for further discussion of the enforceability of the arbitration agreement.

8

of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."). The arbitration agreement is enforceable as to the signing parties under both state and federal law. First, the Parties do not dispute that a contract formed under Alabama contract law; in fact, Scroggins' breach of contract claim relies on the enforceability of the HPA. (*Compare* doc. 167 at 10, *with* doc. 173 at 6). Second, under federal law, an arbitration agreement must be in writing, but the agreement does not have to be signed apart from the contract. *Caley*, 428 F.3d at 1369. This agreement exists in writing and is signed by representatives of both United HealthCare and ARH. Beyond the clear arbitration provision, the contract also reminded the signing parties that it contained an arbitration agreement directly above the signature line. (Doc. 176-1 at 11). Because the agreement is valid under state and federal law, a valid, irrevocable, and enforceable arbitration agreement exists between the signing parties of the HPA.

But Scroggins is not a signing party to the HPA. Accordingly, the Court now turns to whether the parties in *this suit*—in particular, Scroggins—are bound by the arbitration agreement. In Alabama, "a party cannot be required to arbitrate any dispute that he or she has not agreed to submit to arbitration," but if a contract is made for the benefit of a third person, that person may choose to accept and enforce its terms. *Ga. Power Co. v. Partin*, 727 So. 2d 2, 5 (Ala. 1998). Thus, for Scroggins to be held to the arbitration agreement, the Court itself must first be satisfied that she is a third-party beneficiary of the HPA under Alabama law. The Parties agree that Scroggins is a third-party beneficiary because she is an individual insured by United HealthCare whose care is covered by the HPA. (*Compare* doc. 167 at 10, *with* doc. 173 at 8). "Under Alabama law, '[a] party claiming to be a third-

9

party beneficiary of a contract must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental, benefit upon the third party.'" *See Crayton v. Conseco Fin. Corp.—Ala.*, 237 F.Supp.2d 1322, 1326 (M.D. Ala. 2002) (quoting *Weathers Auto Glass, Inc. v. Alfa Mut. Ins. Co.*, 619 So. 2d 1328, 1329 (Ala. 1993)).  The Court agrees that the HPA was intended to directly benefit Scroggins.

The second, crucial element here is that the third person *elects* to accept and enforce the contract. *Partin*, 727 So. 2d at 5.  When a third-party does so, the "third-party beneficiary cannot accept the benefit of a contract, while avoiding the burdens or limitations of that contract." *Id.*  A third-party beneficiary is thus bound by the entirety of the contract he or she seeks to enforce; the beneficiary stands in the shoes of the signatories to the contract. *Id.*

Scroggins cites *Cook's Pest Control, Inc. v. Boykin*, 807 So. 2d 524 (Ala. 2001), and argues that, even though she is a third-party beneficiary attempting to enforce the contract, she is not bound to the arbitration agreement because she is not named in the contract.  In that case, the plaintiff also was a non-signatory to a contract with an arbitration clause that called for arbitration between the signing parties.  But the plaintiff there was not a third-party beneficiary.  Accordingly, the Alabama Supreme Court affirmed the lower court's order denying the defendant's motion to compel arbitration because the plaintiff was not a third-party beneficiary, and the arbitration clause was not broad enough to apply to the plaintiff in that case on her own. *Id.* at 528.

Scroggins' reliance on *Cook's Pest Control, Inc.* is misplaced because the plaintiff in that case specifically disavowed status as a third-party beneficiary and did not invoke

10

any of the benefits of the contract, whereas Scroggins *herself* asserts that she is a third-party beneficiary under Alabama law. *See id.* at 527. Indeed, her breach of contract claim is based upon that premise. (Doc. 167 at 10).

Furthermore, Scroggins fails to prove that the HPA's arbitration clause is limited only to the signatories of the contract. In *Cook's Pest Control, Inc.*, once the court determined that the plaintiff was not a third-party beneficiary, the court decided that the "narrow scope of the arbitration agreement" did not include the plaintiff because it was limited only to the signatories themselves. *See* 807 So. 2d at 527. Scroggins draws a comparison between the contract language in that case and the HPA, arguing that she is not named in the HPA and thus should not be bound to the arbitration agreement. The HPA reads that the only parties to the arbitration clause are the "Plan or Payor and Hospital." (Doc. 184 at 3) (emphasis removed). Scroggins writes, "[t]he provision does not mention, and therefore excludes, a 'member' or 'insured' of a plan or payor." (*Id.*). However, unlike the plaintiff in *Cook's Pest Control, Inc.*, "Scroggins does not (and cannot) bring her breach of contract claim as a 'member' or 'insured.'" (Doc. 185 at 2) (emphasis removed). Scroggins does not bring this suit as anything other than a third-party beneficiary of United HealthCare. She stands in the shoes of a signatory to the contract and is therefore bound by the arbitration clause.

Scroggins' reliance on *Dannelly Enterprises, LLC v. Palm Beach Grading, Inc.*, 200 So. 3d 1157 (Ala. 2016), is also unavailing. In that case, the Alabama Supreme Court remanded for the lower court to determine whether the parties had entered into a contract. *Id.* at 1170. The court found that the parties failed to present clear evidence that the non-

signatory benefitted from the contract. *Id.* In contrast, the Parties herein do not dispute that Scroggins has a benefit stemming from the HPA. Scroggins does argue in part that she only benefits from one section of the contract, Section 4.1. (Doc. 184 at 10). However, she cannot "pick and choose the provisions of the policy that [she] wants to follow." *Ex parte Dyess*, 709 So. 2d 447, 449–50 (Ala. 1997). Scroggins has accepted the benefits and the burdens of the contract in its entirety.

"[T]he parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp.*, 473 U.S. at 626. Keeping the federal policy in favor of arbitration in mind, the Court finds that Scroggins is bound by the arbitration agreement.

### 2. *Whether Scroggins' claims fall within the scope of the arbitration agreement*

The Court finds that the arbitration agreement covers the dispute at hand. For the arbitration clause to govern, the dispute must be one that "arises out of or is related to" the HPA and thus should be "submitted to binding arbitration in accordance with the rules of the American Arbitration Association." (Doc. 176-1 at 8). The burden is on Scroggins to demonstrate that the arbitration agreement does not apply to this dispute. *See Dannelly*, 200 So. 3d at 1165. However, Scroggins brings a breach of contract claim, which directly arises out of the HPA. The arbitration agreement does govern this dispute.

### B. Timeliness and Waiver

Scroggins next argues that, even if the arbitration provision applies to her, the provision has expired, and the motion to compel arbitration is therefore untimely. (Doc. 184 at 11). The arbitration clause reads in part, "[i]n no event may arbitration be initiated

more than one year following the sending of written notice of the dispute." (Doc. 176-1 at 8). Based on this provision, Scroggins argues that "written notice" does not have to be the naming and serving of ARH as the Defendant in this lawsuit. She claims that the Original Complaint filed on May 16, 2016 against a now-dismissed Defendant put ARH on notice. (Doc. 184 at 12). Scroggins further argues that because the defense counsel filed a conflict of interest form in 2017, stating it previously represented ARH, and because the Parties' planning report identified ARH as a party represented by counsel, ARH was on notice. (*Id.* at 13). By these calculations, ARH would have needed to move to compel arbitration in 2018. Scroggins claims the various Defendants to this suit have engaged in a "shell game" to avoid responsibility because ARH never tried to intervene, and the other Defendants never motioned to join ARH. (*Id.* at 16). According to Scroggins, the inefficiencies caused by ARH's "standing idle" and decision to only invoke arbitration at a supposed late hour constitute waiver. (*Id.* at 17). Scroggins maintains, "[t]he arbitration provision is disarmed and deactivated for that reason . . . ." (*Id.* at 14).

The Court does not agree. Scroggins is asking the Court to require potential defendants to preempt plaintiffs themselves and move for arbitration whenever they could possibly be sued. This outcome would have absurd results, conflict with arbitration law, and erode core values of the American legal system.

   1. ***The motion was timely.***

Regarding timeliness, Scroggins simply cannot get around the fact that ARH was ordered joined as a party on March 6, 2020, (doc. 164), was not added by amended complaint until April 27, 2020, (doc. 167), and was not served with the operative complaint

13

until July 1, 2020, (doc. 168). "The law does not require the futile gesture of asking for arbitration before a claim becomes arbitrable; any delay in seeking arbitration should be measured from the time the claim becomes arbitrable." *Partin*, 727 So. 2d at 7 (citing *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1026 (11th Cir. 1982), *overruled on other grounds, Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213 (1985)); *see also Health Care Auth. for Baptist Health v. Dickson*, 2021 WL 138859, at *4 (Jan. 15, 2021) (analyzing a case wherein the claims were arbitrable from the moment the case was filed). Scroggins' claim against the hospital only became arbitrable when ARH became a Defendant, or when a "dispute" between ARH and Scroggins arose from and was related to the HPA. *See Dickson*, 2021 WL 138859, at *4 (wherein the Defendants sought arbitration two years after service). Accordingly, the Court finds that the motion to compel arbitration was timely.

### 2. *ARH has not waived its right to arbitrate.*

Scroggins' waiver arguments fails. The Court conducts a two-part inquiry when a party claims that the other waived its right to arbitration. *Gutierrez v. Wells Fargo Bank*, 889 F.3d 1230, 1236 (11th Cir. 2018); *see also Dickson*, 2021 WL 138859, at *3. First, the Court considers whether, "under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Gutierrez*, 889 F.3d at 1236 (quoting *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315–16 (11th Cir. 2002) (internal quotation marks omitted)). For example, a party may have waived the right to arbitration when they "substantially invoke[d] the litigation machinery prior to demanding arbitration." *Id.*

14

(quoting *S & H Contractors v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1314 (11th Cir. 1990) (internal quotation marks and alterations omitted)).

> Careful examination of our precedent reveals that the purpose of the waiver doctrine is to prevent litigants from abusing the judicial process. Acting in a manner inconsistent with one's arbitration rights and then changing course mid-journey smacks of outcome-oriented gamesmanship played on the court and the opposing party's dime. The judicial system was not designed to accommodate a defendant who elects to forego arbitration when it believes that the outcome in litigation will be favorable to it, proceeds with extensive discovery and court proceedings, and then suddenly changes course and pursues arbitration when its prospects of victory in litigation dim.

*Id.*  Second, the Court considers whether that party's conduct "has in some way prejudiced the other party." *Id.* (quoting *Ivax*, 286 F.3d at 1316 (internal quotation marks omitted)). Ultimately, "the key ingredient in the waiver analysis is fair notice to the opposing party and the District Court of a party's arbitration rights and its intent to exercise them." *Id.*

Here, ARH was joined as the Defendant in 2020, and it never has substantially invoked the litigation process.  And despite Scroggins' reproach that ARH hired counsel in 2017, hiring counsel simply is not a substantial invocation, nor does it suggest that ARH acted inconsistently with its arbitration rights.

Nor did ARH's actions prejudice Scroggins: she was free to add ARH to her complaint at any time.  ARH did not engage in "extensive discovery and court proceedings," nor did it suddenly demand arbitration "when its prospects of victory in litigation dim[med]." *See id.* at 1236.  Instead, ARH filed its motion to compel arbitration on July 22, 2020, shortly after being served. (Doc. 172).  ARH thus provided "fair notice" to the Court and the opposing party of its intent to exercise its arbitration rights. *See*

15

*Gutierrez*, 889 F.3d at 1236. The totality of the circumstances do not support the notion that ARH waived its rights to arbitrate.

Indeed, Scroggins' preferred outcome would also violate two basic values of our legal system. The first is the principle that Scroggins is the master of the complaint. ARH cannot dictate to Scroggins which parties it should sue or when it should sue them. To be clear, the Court does not believe that ARH was unaware of this suit prior to being served. The evidence and Court-applied reason shows that ARH did. However, ARH could not be sure that, after four years of litigation, Scroggins would finally sue the hospital. In fact, far from the Defendants conducting a "shell game," it took a Court order to prompt Scroggins to name ARH as a party. Consequently, the dispute did not exist between ARH and the third-party beneficiary—Scroggins—until ARH was named in the complaint. The second concern is that Scroggins' outcome would run afoul of common law values of fairness. The Court does not think it fair to force potential defendants to preemptively intercede in a case or else they waive their rights to arbitrate.

"Since federal policy requires us to construe arbitration clauses generously, resolving all doubts in favor of arbitration, . . . the plaintiffs' attempt to parse the language of the arbitration [clause] is not persuasive." *Becker v. Davis*, 491 F.3d 1292, 1305 (11th Cir. 2007). ARH's ability to invoke arbitration has not been waived.

### C. Unconscionability

In a final attempt to avoid arbitration, Scroggins claims that the arbitration agreement contained in the HPA is unenforceable because it is unconscionable. In raising this affirmative defense, the burden is on Scroggins to establish that the arbitration

16

agreement is not valid. *See Dannelly*, 200 So. 3d at 1165; *see also Bess v. Check Express*, 294 F.3d 1298, 1306–07 (11th Cir. 2002) ("Under Alabama law, unconscionability is an affirmative defense to the enforcement of a contract, and the party asserting that defense bears the burden of proving it by substantial evidence."). "The Alabama Supreme Court has declared that the two essential elements of unconscionability are '(1) terms that are grossly favorable to a party that has (2) overwhelming bargaining power.'" *Scurtu v. Int'l Student Exch.*, 523 F.Supp.2d 1313, 1323 (S.D. Ala. 2007) (quoting *Am. Gen. Fin., Inc. v. Branch*, 793 So. 2d 738, 748 (Ala. 2000)). Alabama courts require parties to demonstrate both procedural and substantive unconscionability through these elements. *Id.* Procedural unconscionability occurs when "the imposed-upon party lacked meaningful choice about whether and how to enter into the transaction," and substantive unconscionability occurs when "the contract terms are unreasonably favorable to the more powerful party." *Id.* Scroggins' arguments fail to pass muster.

Scroggins bases her argument for unconscionability on the loss of the opportunity to proceed with a class action, unfair costs to Scroggins, and unfair bargaining power. Scroggins' argument reads:

> [i]t is undeniable that ARH is attempting to use arbitration to deprive Scroggins of her right to proceed with a class action and to represent similarly situated patients. Further, not only can Scroggins not afford the cost of arbitration, but the cost to her would exceed her individual damages. Even assuming *arguendo* the third-party beneficiary argument, Scroggins clearly is in an unfair bargaining position, given that she was treated at ARH's emergency room as a result of a car wreck.

17

(Doc. 184 at 20). Scroggins also describes a contract she signed with ARH for "Consent for Services and Financial Responsibility," in which ARH was authorized to act as an agent for her. She adds,

> [i]t is unconscionable that ARH tries to force patients to allow it to act as the patient's agent in seeking benefits from the patient's health insurer, but then (1) chooses not to seek or accept those benefits in the first place, because that choice, which breaches its contract with the insurer, profits ARH at the patient's expense, and (2) seeks to force the patient to arbitrate her claims which arise because ARH breached that very contract with the insurer to which the patient is a third-party beneficiary.

(*Id.* at 21).

None of Scroggins' arguments support the claim that the arbitration agreement is (1) grossly unfavorable to ARH or United HealthCare, or (2) that ARH or United HealthCare had overwhelming bargaining power. Nor do her arguments establish procedural unconscionability through lack of meaningful choice or substantive unconscionability through unreasonably favorable terms to the more powerful party. *See Scurtu*, 523 F.Supp.2d at 1323. The Court recognizes that whenever parties operate at different levels of sophistication, there is a risk of disparate bargaining power. But, as a third-party beneficiary, Scroggins stands in the shoes of United HealthCare. Any concerns of disparities in sophistication or of costs can be set aside, as Scroggins brings absolutely no evidence to dispute ARH and United HealthCare's equal bargaining positions.[6] Additionally, federal precedent persuades the Court that the loss of the ability to bring a

---

[6] Even if the Court considered the arbitration clause by examining Scroggins' own bargaining power, she has not proffered sufficient evidence to support a finding of procedural and substantive unconscionability.

class action does not warrant a finding of unconscionability. *See*, *e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (finding that the FAA preempts a finding of unconscionability when an arbitration provision prevents a class action).

Accordingly, Scroggins has not met her burden of establishing procedural and substantive unconscionability. The arbitration agreement is enforceable.

## VI.   CONCLUSION

The Court is empowered by 9 U.S.C. § 3 to stay this proceeding pending arbitration of this dispute. For the reasons as stated, and for good cause, it is ORDERED as follows:

(1) the Defendant's motion to compel arbitration (doc. 172) is GRANTED; and

(2) the Defendant's motion to dismiss (doc. 172) is DENIED.

It is further ORDERED that this case is STAYED pending arbitration. On or before the fifth day of each month, beginning on September 1, 2021, the Parties shall file a Joint Status Report advising the Court of the status of the arbitration.

Costs are taxed against the Plaintiff for which execution may issue.

DONE this 5th day of March, 2021.

        /s/ Emily C. Marks
    EMILY C. MARKS
    CHIEF UNITED STATES DISTRICT JUDGE